```
                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                          FORT WORTH DIVISION

ATLANTIC RECORDING              §
CORPORATION, ET AL.             §
                                §
VS.                             §  CIVIL ACTION NO.4:06-CV-132-Y
                                §
DIANE HESLEP                    §
                                §
```

## ORDER DENYING MOTION FOR RULE 11 SANCTIONS

The Court has before it defendant Diane Heslep's motion requesting that the Court impose sanctions on Plaintiffs' attorney, Stacy Obenhaus, and the lawfirm Gardere Wynne Sewell LLP, under Federal Rule of Civil Procedure 11. After review, the Court finds Heslep's motion to be frivolous and concludes that it should be DENIED (doc. #31).

I.  Factual Background

Stacy Obenhaus is an attorney with the lawfirm Gardere Wynne Sewell LLP. Collectively, they represent Plaintiffs, who are recording companies that own or control exclusive rights to certain copyrighted sound recordings. Plaintiffs contend that since the early 1990s they have faced a massive and exponentially expanding problem with digital piracy of their copyrighted material over the internet.

It is now well-known that there are numerous programs that anyone can install onto one's computer that will provide access to online networks (referred to as "peer-to-peer" or "P2P" networks) that link millions of users' computers simultaneously to a common peer-to-peer network throughout the world and allow a person to

access, acquire (download), and distribute (upload), illegally, billions of copyrighted sound recordings, movies, and software. *See MGM Studios, Inc., et al. v. Grokster, LTD., et al.,* 545 U.S. 913 (2005); *A&M Records, Inc., et al. v. Napster, Inc., et al.,* 239 F.3d 1004 (9th Cir. 2001). Plaintiffs assert that as a result of the rise of these peer-to-peer networks, they have sustained and continue to sustain enormous financial losses.

To combat this online piracy, Plaintiffs employ the MediaSentry Managed Services unit ("MediaSentry") of Safenet, Incorporated, through the Recording Industry Association of America. MediaSentry is one of the principal providers of online anti-piracy services worldwide, and it specializes in the ability to detect the unauthorized distribution of copyrighted materials over the internet. MediaSentry searches the numerous peer-to-peer networks to identify individuals illegally acquiring and distributing Plaintiffs' copyrighted sound recordings.

Becoming a user of a peer-to-peer network is relatively easy. One need only download from any one of hundreds of websites on the internet and install onto his computer the peer-to-peer software—such as the program *Kazaa*, which is the program alleged to have been used in this case. Once installed, the user can access the peer-to-peer network and is able to search the network for any file, including copyrighted sound recordings that have been converted to a digital file. The user can download that copyrighted sound file, for free, and later transfer that file to a compact disk or digital music player. Also, once that file has

been downloaded onto the user's computer, it is also available to other users on the peer-to-peer network to access and download onto their respective computers. Users of the peer-to-peer software and networks download the copyrighted sound recordings into what is called a "shared directory" onto their computer. As long as the user turns on the sharing feature of the peer-to-peer program, any user on the peer-to-peer network will have access to that user's shared directory and all of the files stored in that directory.

MediaSentry combs these peer-to-peer networks for individuals infringing on Plaintiffs' copyrights and gathers evidence of their unlawful activity. MediaSentry searches for Plaintiffs' copyrighted sound recordings over the network, views the files that a user has in his shared directory, obtains the internet protocol ("IP") address and screen name of that user, and downloads a sampling of the copyrighted recordings contained on that user's shared directory. In doing so, MediaSentry uses the very program employed by the alleged infringing user.

MediaSentry captures a list of all of the files a particular user possesses in his shared directory by taking what are called "screen shots" of the user's shared directory. Screen shots are actual pictures of the screens that MediaSentry and other users on the network view when accessing the user's shared directory. In other words, these screen shots are actual pictures of all of the files available for downloading from the user's shared directory.

Once MediaSentry has a list of all of the files contained on a user's shared directory, it searches the list for Plaintiffs'

3

copyrighted recordings. If the list includes some of Plaintiffs' copyrighted recordings, MediaSentry will download a sampling of those recordings from the user's shared directory on the user's computer. By the conclusion of its investigation of any one user, MediaSentry will have gathered evidence of the copyrighted sound recordings possessed on the user's shared directory on his computer, the metadata for each digital file, screen shots of the user's shared directory on his computer, the user name of the alleged infringer, the user's IP address, and the date and time of the alleged infringement.

In this case, MediaSentry observed an individual logged onto a peer-to-peer network through the *Kazaa* program on January 6, 2005, at 17:42:34 eastern standard time ("EST") using IP address 172.143.120.109. The IP address was assigned to America Online ("AOL"), which serves as an internet service provider ("ISP") allowing access by its subscribers to the internet.

Attached as Exhibit B to Plaintiffs' complaint are a series of the above-described screen shots taken by MediaSentry in this case. The screen shots show approximately 850 digital sound files located on this user's shared directory. (Pls.' Am. Compl. Ex. B.) The user's name on the network was "mke@KaZaA." (*Id.*) Many of the sound files contained on the user's shared directory were recordings by very famous and well known artists. Plaintiffs' own copyrights on some of them. (*Id.*) The screen shots also show that at the time this user was logged onto the network, the user's shared directory was available to some 2.5 million other users.

4

(*Id.*) The screen shots also establish that the millions of users on the network at that time were sharing more than one billion files. (*Id.*) Thus, while on the network, the user "mke@KaZaA" had access to more than a billion files shared by more than 2.5 million users and the more than 2.5 million users on the network would have access to all of "mke@KaZaA's" files on her shared directory.[1]

The screen shots also revealed that one of the files contained on user "mke@KaZaA's" shared directory was "Diane.kpl." (*Id.* at 3.) The "kpl" at the end of the file identifies that file as a *Kazaa* playlist file. One of the functions of the Kazaa program is to enable the user to create *Kazaa* playlist files that are lists of the audio files contained on the user's shared directory that can be played using *Kazaa's* audio player program. This *Kazaa* playlist also allows other users on the network to download the specific files contained on that playlist from the user's shared directory. When creating this playlist, the user is free to assign it any name he chooses.

With this information, Plaintiffs filed a "John Doe" complaint in the Federal District Court for the Eastern District of Virginia. *See Motown Record Company L.P. v. Does 1-95,* No. 1:05-cv-071 (E.D.Va. 2005); (Pls.' App. to Resp. to Mot. for Sanctions at 9-16.) Plaintiffs obtained a subpoena under Federal Rule of Civil Procedure 45 and served that subpoena on AOL in order to learn the identity of the person at IP address 172.143.120.109 on January 6,

---

[1] Although, as will be discussed below, further investigation by Plaintiffs revealed their belief that the user "mke@KaZaA" was Diane Heslep, at that time, the user mke@KaZaA was anonymous.

2005, at 17:42:34 (EST).  In response, AOL identified the user as Diane Heslep of 609 Kelly Terrace, Arlington, Texas 76010. (Pls.' App. to Resp. to Mot. for Sanctions at 28.)

After learning of Heslep's identity, Plaintiffs sent her a notice of their intent to sue her for copyright infringement. (*Id.* at 109.)  The notice contained a copy of the original complaint in this case, informed Heslep of Plaintiffs' allegation of her copyright infringement, and offered to settle this case. (*Id.*)

After attempting unsuccessfully to reach settlement, Plaintiffs filed their copyright-infringement action against Heslep under 17 U.S.C. § 101, *et seq.*, on February 17, 2006.  Shortly thereafter, Heslep offered her computer hard drive to Plaintiffs for inspection to support her assertion that she was not engaged in any ongoing infringement of Plaintiffs' copyrights.  In a demand letter sent to Plaintiffs on June 19, 2006, from Heslep's attorney, Heslep offered to allow Plaintiffs to inspect her hard drive and to work out a suitable protection order for the evidence uncovered through the inspection. (*Id.* at 33.)  The letter also demanded that Plaintiffs remove their allegation of Heslep's ongoing infringement in their original complaint. (*Id.* at 37.)  The letter threatened Rule 11 sanctions if Plaintiffs did not amend their complaint. (*Id.* at 37-38.)

An inspection of Heslep's hard drive did not occur, however, because she demanded terms unacceptable to Plaintiffs.  Among her many demands, Heslep insisted upon a payment of $10,000 and dismissal of all claims if the inspection showed that she was not

6

currently engaged in copyright infringement. (*Id.* at 42-45.) Plaintiffs would not agree to those terms because even if an inspection of Heslep's computer established that she was not currently infringing on Plaintiffs' copyrights, their complaint also alleged that she had so infringed in the past.

After learning of Heslep's objections, Plaintiffs contacted AOL to verify that Heslep was the subscriber to the IP address 172.143.120.109 used on January 6, 2005, at 17:42:34 (EST). (*Id.* at 58.) AOL again confirmed its identification of Heslep.

According to Plaintiffs, in an effort to avoid unnecessary litigation, they filed an amended complaint on July 14, 2006, removing the allegation of Heslep's ongoing and continued infringement. In their amended complaint, Plaintiffs alleged that

> on January 6, 2005, at approximately 5:42 p.m., [Heslep], without the permission or consent of Plaintiffs, used an online media distribution system to distribute the copyrighted recordings to the public and/or to make the copyrighted recordings available for distribution to others, and that, on other occasions on or before January 6, 2005, and continuously through January 6, 2005, [Heslep], without the permission or consent of Plaintiffs, used an online media distribution system to download the copyrighted recordings, to distribute the copyrighted recordings to the public, and/or to make the copyrighted recordings available for distribution to others. In doing so, [Heslep] has violated Plaintiffs' exclusive rights of reproduction and distribution. [Heslep's] actions constitute infringement of Plaintiffs' copyrights and exclusive rights under copyright.

(Pls.' Am. Compl. at 3.) After receiving the amended complaint, Heslep responded by claiming she was at work at 5:42 p.m. (EST) on January 6, 2005, and that she has no idea whose computer was in use

7

at the time in question. (Pls.' App. to Resp. to Mot. for Sanctions at 59-66.) She also claimed that her AOL account was and is used by secondary users, though she has never identified these secondary users. (*Id.*)

In response, Plaintiffs' national counsel sent a letter to Heslep's counsel detailing the evidence they possessed of her alleged infringement and inviting her to provide any information regarding her claim of secondary users of her AOL account. (*Id.* at 70-72.) Heslep's counsel left a voicemail with Plaintiffs' national counsel stating he refused to communicate with them because he regarded this as a Rule 11 issue and advised that he would only communicate through Plaintiffs' local counsel Obenhaus and the lawfirm Gardere Wynne Sewell LLP. (*Id.* at 73.)

Thereafter, Heslep filed a declaration claiming that Plaintiffs' amended complaint falsely alleges she infringed on Plaintiffs' copyright using the *Kazaa* program at 5:42 p.m. (EST) on January 6, 2005. (Heslep Decl. of April 15, 2006 at ¶ 2.) Notably absent in her declaration made under penalty of perjury, however, is any denial of Plaintiffs' allegation that she infringed on Plaintiffs' copyrights "<u>on other occasions</u> on or before January 6, 2005, and continuously through January 6, 2005." (Pls.' Am. Compl. at 3.)(Emphasis added.); (Heslep Decl. of April 15, 2006 at 1-2.) Heslep's attorney also advised Plaintiffs' attorney that AOL had confirmed that Heslep's screen name was not in use at 5:42 p.m. (EST) on January 6, 2005. (Def.'s Mot. for Sanctions at 2.)

8

Again and in response, Plaintiffs requested Heslep produce any evidence to support her claim that AOL confirmed that her screen name was not in use at the time in question, and requested information on any secondary users who have access to her AOL account. Instead, Heslep provided emails she received from AOL. In those emails, AOL advised Heslep that its

> records indicate that the screen name "gocwbys8" was online using IP address 172.143.120.109 from 15:38:59 to 21:17:30 (EST) on January 6, 2005 . . . . Since the screen name "gocwbys8" is a screen name on the AOL account of your client, Ms. Diane Heslep, we identified her in the April 19, 2005, subpoena response [referring to Plaintiffs' Rule 45 subpoena].

(Pls.' App. to Resp. to Mot. for Sanctions at 90.) Although AOL gave Heslep permission to turn over those emails to Plaintiffs in early August 2006, she did not disclose them until October 21, after she filed her motion for sanctions on October 5.

II. Analysis

   A. Standard

The Federal Rules of Civil Procedure are designed "to secure the just, speedy, and inexpensive determination of every action." FED.R.CIV.P. 1. Rule 11 champions these goals and in pertinent part provides,

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,—

9

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law . . .;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . .

FED.R.CIV.P. 11(b).  Each obligation under Rule 11 must be satisfied; violation of any justifies sanctions.  *See Whitehead, et al. v. Food Max of Mississippi, Inc., et al.,* 332 F.3d 796, 802 (5th Cir. 2003).  In assessing whether an attorney has met his obligations under Rule 11, this Circuit applies "the 'snapshot' rule, measuring the attorney's conduct as of the time of the signing." *FDIC v. Calhoun, et al.,* 34 F.3d 1291, 1296 (5th Cir. 1994).  And "the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances."  *Whitehead,* 332 F.3d at 802 (internal quotations and citations omitted).

B.  Discussion

To start with, Plaintiffs have pellucidly explained the extensive investigation that was conducted before filing suit against Heslep for copyright infringement. Plaintiffs retained the services of a third-party investigator whose investigation revealed that a user had logged onto a peer-to-peer network using the *Kazaa*

program and made available for distribution, from that user's shared directory on that user's computer, more than 850 music files. Screen shots of the user's shared directory revealed a *Kazaa*-playlist file called "Diane.kpl," and verified that many of Plaintiffs' copyrighted recordings were being freely distributed to millions of other users on the network by this user. MediaSentry's investigation identified the IP address used to access the internet, and it was later traced to an AOL account controlled by Heslep. Based on that information, the Court concludes that Plaintiffs' attorneys reasonably believed that Heslep was responsible or at least shared responsibility for the infringement of their clients' copyrights through the use of her AOL account.

The Court rejects Heslep's characterization of this lawsuit, and many others like it, as "predatory." (Def.'s Mot. for Sanctions at 3.) Plaintiffs' attorneys brought this lawsuit not for the purposes of harassment or to extort Heslep as she contends, but, rather, to protect their clients' copyrights from infringement and to help their clients deter future infringement. The evidence uncovered from MediaSentry's investigation shows that Plaintiffs' allegation of Heslep's alleged copyright infringement have evidentiary support and will likely have more evidentiary support through further investigation and discovery.

For now, our government has chosen to leave the enforcement of copyrights, for the most part, in the hands of the copyright holder. *See* 17 U.S.C. § 101, *et seq*. Plaintiffs face a formidable task in trying to police the internet in an effort to reduce or put

11

a stop to the online piracy of their copyrights. Taking aggressive action, as Plaintiffs have, to defend their copyrights is certainly not sanctionable conduct under Rule 11. The right to come to court to protect one's property rights has been recognized in this country since its birth.

Furthermore, as detailed above, Plaintiffs went to considerable effort to work with Heslep to determine her true culpability in this case. Plaintiffs have tried to cooperate with Heslep and examine her computer hard drive, but she has made unreasonable demands. Plaintiffs have repeatedly asked Heslep for information regarding the alleged secondary users of her AOL account, but she has provided none. And Plaintiffs have repeatedly asked to view her evidence to support her defensive claims, but she has failed to disclose. Time and again, Heslep has failed to back up her assertions with any substance, leading any reasonable person to suspect that her defensive claims are without merit.

In her motion, Heslep argues that Plaintiffs' attorneys should be sanctioned because she has established that she was at work at the exact date and time the amended complaint alleges she was online infringing on Plaintiffs' copyrights, that AOL has confirmed that she was not herself online at the specific date and time in question, and that AOL could not identify the specific computer in use at the date and time in question. The evidence suggests that these assertions are disingenuous, and they certainly do not support sanctioning Plaintiffs' attorneys.

12

First, whether Heslep was at work at the exact date and time alleged in the amended complaint is a red herring. Plaintiffs' amended complaint does not allege that infringement of their copyrights happened at exactly 17:42:34 (EST) on January 6, 2005. Instead, it alleges that at 17:42:34 (EST) on January 6, 2005, "<u>and . . . on other occasions on or before January 6, 2005, and continuously through January 6, 2005</u>, . . ." Heslep infringed on Plaintiffs' copyrights. (Pls.' Am. Compl. at 3.)(Emphasis added.) Further, the evidence she provided to Plaintiffs from AOL establishes that her AOL account was online for approximately six hours from 3:38 p.m. (EST) until 9:17 p.m. (EST). While Heslep may have been at work at 5:42 p.m. (EST), as she claims, she has not claimed to still have been at work at 9:17 p.m. (EST).

Moreover, the evidence shows that alleged infringement of Plaintiffs' copyrights occurred using her AOL account. Even if Heslep herself was not online on January 6 acquiring and distributing Plaintiffs' copyrighted recordings, it's reasonable to infer that someone she knew and gave permission to use her AOL account was. Thus, it is reasonable to infer that Heslep may be guilty of contributory infringement. *See Grokster,* 545 U.S. at 930. Although the copyright act does not expressly provide for liability for infringement committed by another, "doctrines of secondary liability [have] emerged from common-law principles and are well established in the law." *Id.* Essentially, these doctrines attach liability upon anyone who is an aider and abetter of copyright infringement. *See Id.* The evidence certainly reasonably implies

13

that Heslep, if not directly, may have contributorily infringed on Plaintiffs' copyrights. This is further buttressed by the fact that to date, although she alleges there are secondary users who have access to her AOL account, she has refused to provide any information to Plaintiffs regarding these secondary users—possibly assisting those secondary users in escaping liability and obstructing Plaintiffs' ability to enforce their copyrights.

Second, Heslep's claim that AOL confirmed that she was not online at 17:42:34 (EST) on January 6, 2005, is simply false. AOL confirmed twice for Plaintiffs that a screen name in Heslep's AOL account was online at the date and time in question. And the emails Heslep provided to Plaintiffs confirm that screen name "gocwbys8" was online at that time and is a screen name registered to Heslep's AOL acount.

While that does not conclusively prove that Heslep herself accessed the internet through AOL at the date and time in question, neither does it prove that she did not. What it does show is that AOL has not confirmed that Heslep herself was not online on the date and time in question.

Third, for the same reasons just discussed above, whether AOL can or cannot confirm what specific computer was on the internet on the date and time in question does not establish that Plaintiffs' attorneys committed sanctionable conduct under Rule 11. The evidence strongly suggests that infringement of Plaintiffs' copyrights took place through the use of Heslep's AOL account. "It is not necessary that an investigation into the facts be carried to

14

the point of absolute certainty." *Kraemer v. Grant County, et al.*, 892 F.2d 686, 689 (7th Cir. 1989). The investigation need only be reasonable under the circumstances. *Thomas v. Capital Sec. Servs.*, 836 F.2d 866, 875 (5th Cir. 1988). Under these circumstances, where the piracy takes place secretly and anonymously over the internet, and with the perpetrator not readily or easily identifiable, the investigation was more than reasonable. Moreover, the conduct of Plaintiffs' attorneys in attempting to resolve this dispute with Heslep has also been more than reasonable.

Finally, the Court concludes that sanctions are appropriate in this case, but not against Plaintiffs' attorneys. Rather, the Court concludes that sanctions are appropriate against Heslep's attorney, Thomas Kimble. Among the many prohibitions contained in Rule 11, is one prohibiting an attorney from filing a motion for the purposes of harassment and unnecessarily increasing the cost of litigation. FED.R.CIV.P. 11(b); *see also Browne v. NASD, Inc.*, No. 3:05-CV-2469-G, 2006 U.S. Dist. LEXIS 90657 at *28 (N.D.Tex. 2006)(Fish, C.J.)(stating the filing of a motion for sanctions is itself subject to the requirements of Rule 11 and may lead to sanctions). Kimble's frivolous motion for sanctions clearly does both. The Court also notes that it has already sanctioned Kimble for opposing discovery unreasonably, in bad faith, and in violation of *Dondi Properties Corp. v. Commerce Savings & Loan Assoc.*, 121 F.R.D. 284 (N.D.Tex. 1988).

The Court does not take motions for sanctions lightly. Such motions, upon mere filing, can damage an attorney's reputation,

immediately call upon that attorney to defend his integrity, and can place a chilling effect on the Court's bar, preventing its members from representing their clients with vigor and creative advocacy, or from seeking to persuade the Court to move the law in a new direction.  Such motions, when frivolously filed, will not only harm the attorney that is its target, but may harm the Court as well by affecting the quality of the advocacy before it.  For this reason, frivolous motions for sanctions that harass the opposing party's attorney, chill that attorney's zealous representation of his client, and needlessly increase the cost of litigation cannot go unpunished.  Accordingly, the Court concludes that sanctions are appropriate against Kimble.

III. Conclusion

For the foregoing reasons, Heslep's motion for sanctions is DENIED.  It is further ORDERED that Kimble, personally, pay Plaintiffs' reasonable costs, including attorney's fees, incurred in defending against his client's baseless motion for sanctions. *See Browne,* 2006 U.S. Dist. LEXIS 90657 at *28 ("The Court may award to the person who prevails on a motion under Rule 11 . . . reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion."). Plaintiffs shall have fourteen days from the date of this order to submit affidavits in support of such costs and fees, after which time Kimble shall have

16

seven days to file any objections to the reasonableness of the costs and fees claimed by Plaintiffs.

    SIGNED May 16, 2007.

                                  */s/ Terry R. Means*
                              TERRY R. MEANS
                              UNITED STATES DISTRICT JUDGE

TRM/flg                     17